IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NICHOLAS AGUILAR, § | | |
|     *Plaintiff*, § | | CIVIL ACTION NO. |
| § | | |
| v. § | | SA-21-CV-01048-XR |
| § | | |
| PICK FIVE IMPORTS, INC. d/b/a § | | |
| MAXI-MATIC USA, GUANGDONG § | | |
| TREDY ELECTRIC CO. LTD., AND § | | |
| INTERTEK TESTING SERVICES NA, INC. § | | |
|     *Defendants*. § | | *JURY REQUESTED* |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Nicholas Aguilar now files this First Amended Complaint against Defendants Pick Five Imports, Inc. d/b/a Maxi-Matic USA, Guangdong Tredy Electric Co. Ltd., and Intertek Testing Services NA, Inc. (collectively "Defendants"). Nicholas Aguilar would respectfully show the Court the following:

### PARTIES

1. Plaintiff, Nicholas Aguilar ("Aguilar" or "Plaintiff"), is an individual whose residential domicile and home is located in Bexar County, Texas. He may be served through his attorney of record, Tej R. Paranjpe, of Paranjpe Mahadass Ruemke LLP, located at 3701 Kirby Dr., Suite 530, Houston, Texas 77098.

2. Defendant Pick Five Imports, Inc. d/b/a Maxi-Matic USA ("Maxi-Matic") is a California corporation transacting business in Texas, with its headquarters and principal place of business located at 18401 E Arenth Ave #B, City of Industry, California 91748, and may be served

with process through its registered service address at 18401 E Arenth Ave #B, City of Industry, California 91748, or wherever it may be found.

3. Defendant Guangdong Tredy Electric Co. Ltd. ("Tredy") is a foreign for profit corporation benefiting from the sale of its products in Texas' market and to Texas consumers, has availed itself to the law of Texas, the forum state, with its headquarters and principle place of business in Guangdong, China, and may be served with process through its registered agent and principal address located at No. 16 Huatian Road, Ronggui, Shunde, Foshan, Guangdong, China, or wherever it may be found.

4. Defendant Intertek Testing Services NA, Inc. ("Intertek") is a New York corporation, with its headquarters and principal place of business located at 3933 US-11, Cortland, New York 13045, and may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, at 211 E. 7th Street, Suite 620, Austin, TX 78701, or wherever it may be found.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) and (a)(3) because the Plaintiff and Defendants are citizens of different U.S. states, a citizen of a foreign state, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

6. Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## CONDITIONS PRECEDENT

7. All conditions precedent have been performed or occurred.

## RESPONDEAT SUPERIOR

8. Defendants are legally responsible to the Plaintiff for the acts and omissions of their employees, agents, servants, and representatives under the legal doctrines of respondeat superior, agency, and/or ostensible agency. As a result thereof, the Defendants are vicariously liable for all wrongful and illegal acts, omissions, and conduct of their employees, agents, servants and representatives.

## MISNOMER AND ALTER EGO

9. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties were or are "alter egos" of parties named in this complaint. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

10. The "alter ego doctrine permits the imposition of liability upon the parent company for torts and contractual obligations of its subsidiary…" *Miles v. Am. Telephone & Telegraph Co.,* 703 F.2d 193, 195 (5th Cir. 1983). The theory "provides a vehicle for bringing a subsidiary within the reach of the Texas long-arm statute because a close relationship between a parent and its subsidiary may justify a finding that the parent does business in a jurisdiction through the local activities of its subsidiaries, or vice versa." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Circ. 1983); *Walker v. Newgent* 583 F.2d 163, 167 (5th Cir. 1978).

11. "Where a parent establishes a subsidiary… and dominates it…that the subsidiary is a mere conduit for the parent's business, the parent should not be able to shift the risk of loss." *United States v. Jon-T Chemicals, Inc.* 768 F.2d 686, 693 (5th Cir. 1985); *Nelson v. Int'l. Paint Co.* 734 F.2d 1084, 1093 (5th Cir. 1984); *Edwards Co. v. Monogram Indus.* 730 F.2d 977, 982 (5th Cir. 1984); *Miles v. Am. Tel. & Tel. Co.* 703 F.2d 193, 195 (5th Cir. 1983).

## AGENCY, JOINT VENTURE, AND CONSPIRACY

12. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, each of the Defendants were the parent, subsidiary, agent, servant, employee, coventurer, and/or co-conspirator of the other Defendants and were at all times mentioned, acting within the scope, purpose, consent, knowledge, ratification and authorization of such agency, employment, joint venture and conspiracy. Plaintiff is informed and believes and thereon alleges that each of the Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged was proximately caused by their conduct.

## FACTS

13. Tredy is a consumer goods manufacturer whose products are sold worldwide, including within the State of Texas. Within the course and scope of its business, Tredy manufactures kitchen goods for home use by consumers. including the subject "Elite Bistro Pressure Cooker," which specifically includes the Model Number EPC-813 (referred to hereafter as "Pressure Cooker" or "Product") that is at issue in this case.

14. Maxi-Matic is a consumer products distribution company, which markets and sells consumer goods worldwide, including within the State of Texas. Within the course and scope of its business, Maxi-Matic marketed and sold the Pressure Cooker manufactured by Tredy.

15. Intertek is a products testing, inspecting, and certification company, which certifies consumer products that are sold worldwide, including within the State of Texas. Within the course and scpe of its business, Intertek provided a certification of quality on the Pressure Cooker.

16. Maxi-Matic touts the "safety" of its pressure cookers, and states that they cannot be opened while in use. Intertek also certified the product as "safe." Despite Defendants' claims

of "safety," it designed, manufactured, marketed, certified, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects.

17. According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to be designed with a "safety feature" and that prevents the lid from opening until all pressure is released; misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use.

18. On or about October 30, 2019, Plaintiff was making menudo in the Pressure Cooker while at home with his family. The Pressure Cooker beeped indicating that the cook time was completed. After the float valve on top of the Pressure Cooker dropped, Plaintiff started to open the lid of the Pressure Cooker with minimal force. Right as he was opening the lid, it shot up and the scalding hot contents were forcefully ejected from the Pressure Cooker completely covering Plaintiff's face, the right side of his head, his neck, and his arm and hand.

19. As a direct and proximate result of Defendants' conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and permanent scarring and disfigurement. Plaintiff was taken by ambulance to a nearby hospital for treatment of his severe second degree burns on his face and body. Plaintiff was given a chemical peel for treatment and while recovering Plaintiff was unable to work both as a truck driver and as a musician in his mariachi group. Today, Plaintiff has scars all around his face, neck, and back that affect him both physically and mentally.

20. The Pressure Cooker's defects cause significant risk of bodily harm and injury to its consumers. Specifically, said defects manifest themselves when, despite Defendant's statements to the contrary, the lid of the pressure cooker *is* removable with built-up pressure, with heat and steam inside the unit. When the lid is removed under such circumstances, rather than

pressure being released in a manner for safe removal of the lid, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders.

21.     Defendants knew or should have known of these defects, but nevertheless put profit ahead of safety by continuing to sell the Pressure Cooker to consumers, failing to warn consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like him.

22.     By reason of the forgoing acts or omissions, the Plaintiff and/or his family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

23.     Plaintiff used his pressure cooker for its intended purpose of preparing meals for himself and/or family and did so in a manner that was reasonable and foreseeable by the Defendants.

24.     However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that they failed to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, his family, and similar consumers in danger while using the pressure cookers.

25.     Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

26. Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

27. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

28. Defendants knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendants continue to ignore and/or conceal its knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers.

29. As a direct and proximate result of Defendants' intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

## CAUSES OF ACTION

### COUNT 1:
### STRICT PRODUCTS LIABILITY

30. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

31. At the time of Plaintiff's injuries, Defendants' pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

32. Defendants' pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendants.

33. Plaintiff and his family did not misuse or materially alter the pressure cooker.

34. The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

   a. The pressure cookers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur; Defendants failed to warn and place adequate warnings and instructions on the pressure cookers;

   d. Defendants failed to adequately test the pressure cookers; and

   e. Defendants failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

35. The Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

### COUNT 2:
### NEGLIGENT PRODUCTS LIABILITY

36. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

37. Defendants had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and his family.

38. Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendants knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

39. Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of its pressure cookers in that, among other things, they:

   a. Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

   b. Placed an unsafe product into the stream of commerce;

   c. Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and

   d. Were otherwise careless or negligent.

40. Despite the fact that Defendants knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market its pressure cookers to the general public.

41. The Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

## COUNT 3:
## BREACH OF EXPRESS WARRANTY

42. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

43. Defendants expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff and his family. Moreover, Defendants expressly warranted that the lid of the pressure cooker could not be removed while the unit remained pressurized.

44. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

45. Defendants marketed, promoted and sold its pressure cookers as a safe product, complete with "safety features."

46. Defendants' pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

47. Defendants breached their express warranties in one or more of the following ways:

   a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendants, were defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

   b. Defendants failed to warn and/or place adequate warnings and instructions on their pressure cookers;

   c. Defendants failed to adequately test its pressure cookers; and

   d. Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their pressure cookers.

48. Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

49. The Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

## COUNT 4:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

50. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

51. At the time Defendants marketed, distributed and sold their pressure cookers to the public including Plaintiff and his family, Defendants warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

52. Members of the consuming public, including consumers such as Plaintiff, were intended third-party beneficiaries of the warranty.

53. Plaintiff reasonably relied on Defendants' representations that its pressure cookers were a quick, effective and safe means of cooking.

54. Defendants' pressure cookers were not merchantable because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

55. Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

56. The Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

## COUNT 5:
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

57. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

58. Defendants manufactured, supplied, and sold their pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently, and safely.

59. Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

60. Defendants' pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

61. Plaintiff reasonably relied on Defendants' representations that its pressure cookers were a quick, effective, and safe means of cooking.

62. The Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

## COUNT 6:
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

63. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

64. A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in Texas Business & Commerce Code §17.46(b) and relied on by a consumer to the consumer's detriment; (2) breach of an express or implied warranty; or (3) any unconscionable action or course of action by any person.

65. Plaintiff is a consumer under Texas Business & Commerce Code §17.45(4).

66. Defendants can be sued under the DTPA. Each Defendant is a person under Texas Business & Commerce Code §17.45(3) that committed a deceptive act or practice that was in connection with the Plaintiff's transaction in purchasing the pressure cooker.

67. Defendants committed one or more of the following wrongful acts:

   a. A false, misleading, or deceptive act or practice listed below that was relied on by the Plaintiff to their detriment:

      i. causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Pressure Cooker;

      ii. representing that the Pressure Cooker has sponsorship, approval, characteristics, uses, benefits, or quantities which it does not have;

      iii. representing that the Pressure Cooker was of a particular standard, quality, or grade when it is of another;

      iv. advertising the Pressure Cooker with intent not to sell them as advertised; and

      v. failing to disclose information concerning the Pressure Cooker which was known at the time of the transaction and such failure to disclose such information was intended to induce the Plaintiff and consumer into a transaction into which the Plaintiff and consumer would not have entered had the information been disclosed.

   b. A breach of an express or implied warranty; and

   c. Any unconscionable action or course of action.

68. The Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

## DAMAGES

69. As a direct and proximate result of the acts and omissions outlined above, Plaintiff has been severely injured. Defendants' conduct caused physical pain, economic losses, loss of

consortium, as well as emotional distress, mental anguish, and trauma. Plaintiff seeks compensatory damages in an amount deemed sufficient by the tier of fact to compensate them for the following damages:

    a. Medical, hospital, and pharmaceutical charges and expenses in the past;

    b. Medical, hospital, and pharmaceutical charges and expenses that, in reasonable medical probability, will be incurred in the future;

    c. Past, present, and future mental anguish;

    d. Pain and suffering in the past;

    e. Pain and suffering that, in reasonable probability, will be suffered in the future;

    f. Loss of consortium;

    g. Disability and impairment in the past;

    h. Disability and impairment that, in reasonable probability, will occur in the future;

    i. Past, present, and future disfigurement;

    j. Past and future loss earnings or loss of wage-earning capacity;

    k. Costs of suit;

    l. Exemplary damages; and

    m. Any and all other damages to which Plaintiff may show himself entitled.

70. Plaintiff also seeks damages in accordance with Texas Business & Commerce Code §17.50(b) and §17.50(d)

71. Plaintiff has suffered damages from the Defendants' wrongful conduct described herein. Accordingly, Plaintiff is seeking damages over $1,000,000.00.

## **JURY DEMAND**

72. Plaintiff respectfully requests a trial by jury.

## **PRAYER**

73. For these reasons, Plaintiff asks the Court to issue citations for the Defendants to appear and answer, and that Plaintiff be awarded a judgment against the Defendants for the following:

a. Compensatory and actual damages in an amount deemed sufficient by the trier of fact;

b. Costs of Court;

c. Incidental damages;

d. Exemplary damages;

e. Prejudgment and post-judgment interest at the maximum legal rate per annum until paid; and

f. Such other and further relief, both general and special, at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**Paranjpe Mahadass Ruemke LLP**

 /s/Tej Paranjpe
Tej Paranjpe
*Attorney-in-charge*
State Bar Number: 24071829
3701 Kirby, Suite 530
Houston, Texas 77098
TParanjpe@pmrlaw.com
(832) 667.7700 Telephone
(832) 202.2018 Facsimile
*Counsel for Plaintiff*